# United States Court of Appeals
# for the Fifth Circuit

---

No. 23-11132

---

United States Court of Appeals
Fifth Circuit

**FILED**

September 30, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

RUEL M. HAMILTON,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CR-83-1

---

Before WIENER, ELROD, and WILSON, *Circuit Judges*.

CORY T. WILSON, *Circuit Judge*:

A jury convicted Ruel M. Hamilton of bribery under 18 U.S.C. § 666(a)(2) based on his interactions with Dallas City Council member Dwaine Caraway but acquitted Hamilton on a related Travel Act count under 18 U.S.C. § 1952(a)(3). This court vacated Hamilton's § 666 conviction due to an improper jury instruction. When the Government decided to retry the § 666 count on remand, Hamilton moved to dismiss based on collateral estoppel. The district court denied his motion. Because Hamilton has not shown that "the factual issue allegedly barred by collateral estoppel was

No. 23-11132

actually decided in the first proceeding," *Garcia v. Dretke*, 388 F.3d 496, 501 (5th Cir. 2004) (internal quotation marks and citation omitted), we affirm.

## I.

### A.

Hamilton is a wealthy real estate developer in Dallas, Texas. In 2018, Hamilton and others were engaged in an effort to place on the ballot a proposed ordinance that would require certain private employers to provide paid sick leave to their employees. They failed to obtain the needed signatures. Nevertheless, the City Council could still vote to place the issue on the ballot that November if the Mayor agreed to put a discussion of the ordinance on the City Council's agenda. To promote this possible avenue, Councilman Philip Kingston asked Hamilton to speak with Councilman Dwaine Caraway, who "had a much warmer relationship" with the Mayor, to see if Caraway would ask the Mayor to put the proposed ordinance on the agenda for the City Council's next meeting. Hamilton agreed. Unbeknownst to Hamilton, Caraway was cooperating with the FBI in a corruption investigation.

Unable to reach Caraway initially, Hamilton left him a voicemail about the ordinance. At the FBI's behest, Caraway returned Hamilton's call on August 2, 2018. The FBI recorded that call. During the conversation, Hamilton explained how Caraway could help to get the proposed ordinance on the ballot and asked Caraway if he would talk to the Mayor. Though Caraway did not commit to talking to the Mayor about the ordinance, he scheduled an in-person meeting with Hamilton the next day. The FBI also recorded that meeting.

When Hamilton arrived for the meeting on August 3, Caraway was talking to his mother on the phone about her poor health and medical bills. After Caraway hung up, the conversation quickly turned to the proposed

No. 23-11132

ordinance.  Among other things, Caraway and Hamilton discussed the council members who would likely vote favorably and the importance of getting the ordinance on the agenda for the August 8 council meeting.

Hamilton then stated, "I've been told, there's only one person that might get the Mayor to [put the ordinance on the next meeting agenda] and that's Councilmember Dwaine Caraway."  As the conversation proceeded, Hamilton referenced Caraway's potential run for reelection.  He told Caraway that he thought Caraway was "doing an extraordinary job in [Caraway's] district," and that he and Caraway could "get a lot of stuff done."  Hamilton then clarified the point he was trying to make:  "What I'm saying is, I'm there, you know, and so if there is anything that I can help you with, I mean, I hope you feel like you can reach out."  Caraway responded, "Well, I'm going to tell you something, I'm reaching out today.  I . . . got to go find me $6,200 today."[1]

The conversation then turned to a real estate development project in Caraway's district.  As they wrapped up, Hamilton assured Caraway that he wanted to help with that project.  Hamilton then asked, "So what can I do for you right now today?"  Caraway responded, "You can answer that bill that I just threw out there . . . for about 62 today and that will help me . . . do what I need to do."  After Caraway agreed to "follow through with the Mayor," Hamilton wrote Caraway a check for $7,000.

**B.**

A grand jury indicted Hamilton on four counts.  Two of those counts concerned Hamilton's interactions with Caraway:  bribery of a local government agent receiving federal benefits, *see* 18 U.S.C. § 666(a)(2), and

---

[1] Hamilton asserts that the money was to pay for Caraway's mom's medical bills.

No. 23-11132

use of an interstate facility to violate the Travel Act, *see* 18 U.S.C. § 1952(a)(3).[2] After a two-week trial, the district court submitted the case to the jury. As to the Travel Act count, the district court instructed the jury that the "statute requires a direct and intended exchange of the benefit for the recipient's action, not merely a gratuity," i.e., a *quid pro quo* bribe. Conversely, the district court did not expressly instruct the jury that the § 666 count required proof of a *quid pro quo* bribe.

The jury convicted Hamilton on the § 666 count but acquitted him on the Travel Act count. Hamilton appealed his conviction, arguing that the district court should have expressly instructed the jury that the § 666 count required proof of a *quid pro quo* bribe, as opposed to a mere gratuity. This court agreed. *United States v. Hamilton*, 46 F.4th 389, 398–99 (5th Cir. 2022), *petition for reh'g en banc denied*, 62 F.4th 167 (5th Cir. 2023). Accordingly, we vacated Hamilton's conviction and remanded for further proceedings. *Id.* at 399.

The Government elected to retry the case. Hamilton moved to dismiss the § 666 count stemming from his interactions with Caraway. He argued, as he does on appeal, that double jeopardy precludes the Government from relitigating that count. According to Hamilton, because the jury acquitted him on the Travel Act count, it necessarily found that the check he wrote for Caraway on August 3 was not a *quid pro quo* bribe. And because this

---

[2] The other two counts involved bribes Hamilton allegedly made to Councilwoman Carolyn Davis, in violation of 18 U.S.C. § 666. The jury convicted Hamilton of those charges. However, as explained *infra*, this court reversed those convictions because the district court failed to instruct the jury that a conviction under § 666 requires proof of a *quid pro quo* bribe, as opposed to a mere gratuity. *United States v. Hamilton*, 46 F.4th 389, 398–99 (5th Cir. 2022), *petition for reh'g en banc denied*, 62 F.4th 167 (5th Cir. 2023). The Government also intends to retry Hamilton on those charges. But Hamilton's double jeopardy argument only applies to the § 666 charge related to his interactions with Caraway. Thus, the counts related to Davis are not at issue in this appeal.

No. 23-11132

court held that the § 666 count required proof of a *quid pro quo* bribe, the first jury's acquittal on the Travel Act count is dispositive as to his § 666 claim.

The district court rejected Hamilton's argument and denied his motion. The court reasoned that the § 666 count and the Travel Act count "concern[ed] different conduct on different days, and involve[d] different elements[.]" Specifically, the Travel Act count "required the jury to find that when he spoke with Caraway by phone on August 2, Hamilton had the specific intent to promote, manage, establish or carry on unlawful activity, namely bribery in violation of Texas Penal Code Section 36.02." In contrast, the § 666 count "related to Hamilton's actual conduct in writing and transmitting to Caraway a $7,000 check the next day." Based on those differences the district court concluded:

> It is not the case that the issue of whether the check . . . was a gratuity or a bribe is implicated by the jury's decision to acquit Hamilton on [the Travel Act count] based on what he was intending the day before he acted. Put differently, a lack of the requisite specific intent for the alleged Travel Act violation on August 2 is not dispositive of whether Hamilton paid a bribe on August 3.

To support its reasoning, the district court pointed to notes sent by the jury during deliberation "indicating that they were grappling with" the specific intent element of the Travel Act count, as opposed to whether the check was

No. 23-11132

a *quid pro quo* bribe or a gratuity.[3]  Hamilton timely appealed the district court's order.[4]

## II.

"Whether a prosecution violates the Double Jeopardy Clause or is precluded by collateral estoppel are issues of law that we review *de novo*." *United States v. Brown*, 571 F.3d 492, 497 (5th Cir. 2009) (citation omitted). The party invoking collateral estoppel "bears the burden of demonstrating

---

[3] Though the district court referenced the jury notes to support its conclusion, it also plainly stated that the notes were "not dispositive," but rather simply "support[ed] the obvious conclusion the Court would [have] reach[ed] without them." Hamilton asserts that the district court improperly considered the jury notes in denying his motion. Some courts have considered jury notes in weighing whether collateral estoppel applies in the double jeopardy context. *See, e.g.*, *Owens v. Trammell*, 792 F.3d 1234, 1247–48 (10th Cir. 2015); *United States v. Venable*, 585 F.2d 71, 79 (3d Cir. 1978); *see also United States v. Barragan-Cepeda*, 29 F.3d 1378, 1380 (9th Cir. 1994) (holding that juror affidavits could properly be considered in a collateral estoppel inquiry). Though this court has yet to address the issue directly, we have refused to consider jury notes in other contexts due to their speculative nature. *E.g.*, *Sanchez v. Davis*, 936 F.3d 300, 307 (5th Cir. 2019); *United States v. Agofsky*, 458 F.3d 369, 374 (5th Cir. 2006). Further, in holding that courts should not consider hung counts in conducting double jeopardy analysis, the Supreme Court cautioned against "speculati[ng] into what transpired in the jury room" and "explorations into the jury's sovereign space." *Yeager v. United States*, 557 U.S. 110, 120–22 (2009). Thus, we are hesitant to pass on the issue of whether the district court properly considered the jury notes in conducting its analysis. Setting the jury notes aside, we conclude that the Double Jeopardy Clause is not implicated regardless.

[4] Neither party challenges our jurisdiction on appeal. But the Government raised the issue of jurisdiction in the district court by arguing that Hamilton's motion to dismiss was frivolous. And "[w]e have an independent duty to determine our jurisdiction over any case presented to us for decision." *Persyn v. United States*, 935 F.2d 69, 71 (5th Cir. 1991) (citation omitted). Though Hamilton's appeal is ultimately unsuccessful, we agree with the district court that his arguments are at least "colorable," giving us jurisdiction under 28 U.S.C. § 1291. *See United States v. Shelby*, 604 F.3d 881, 885 (5th Cir. 2010) (per curiam) (citation omitted) ("Under the collateral order doctrine, we have jurisdiction under 28 U.S.C. § 1291 to review a pretrial order rejecting a claim of double jeopardy, providing the jeopardy claim is 'colorable.'").

No. 23-11132

that the factual issue allegedly barred by collateral estoppel 'was actually decided in the first proceeding.'" *Garcia*, 388 F.3d at 501 (quoting *Dowling v. United States*, 493 U.S. 342, 350 (1990)). "This burden requires a defendant to prove that a second jury [would] necessarily ma[k]e a finding of fact that contradicted a finding of the first jury." *Id.* (citation omitted).

## III.

The sole issue on appeal is whether Hamilton's acquittal on the Travel Act count in his first trial precludes the Government from retrying his § 666 count stemming from his interactions with Caraway. It does not.

"The Double Jeopardy Clause provides that no person subject to the same offense shall 'be twice put in jeopardy of life or limb.'" *Lewis v. Bickham*, 91 F.4th 1216, 1222 (5th Cir. 2024) (per curiam) (quoting U.S. CONST. amend. V). In *Ashe v. Swenson*, the Supreme Court made clear that the collateral estoppel doctrine is incorporated into the Double Jeopardy Clause. 397 U.S. 436, 445 (1970). Thus, "'when an issue of ultimate fact has once been determined by a valid and final judgment,' the Clause forbids the prosecution from relitigating that issue 'in any future lawsuit.'" *United States v. Auzenne*, 30 F.4th 458, 462 (5th Cir. 2022) (quoting *Ashe*, 397 U.S. at 443).

*Ashe* set forth a two-part test to resolve whether collateral estoppel applies in the double jeopardy context. *United States v. Cessa*, 861 F.3d 121, 140 (5th Cir. 2017). The threshold determination is "to determine which facts were 'necessarily decided' in the first trial." *United States v. Brackett*, 113 F.3d 1396, 1398 (5th Cir. 1997) (quoting *United States v. Levy*, 803 F.2d 1390, 1398–99 (5th Cir. 1986)). If the court concludes that a fact was necessarily decided in the first trial, it must then "determine whether the fact[] necessarily decided in the first trial constitute[s] [an] essential element[] of the offense in the second trial." *Cessa*, 861 F.3d at 140 (internal

No. 23-11132

quotation marks and citations omitted). We need reach only the first part of *Ashe*'s test to decide this case.

The application of the *Ashe* test in criminal cases is often "awkward, . . . as a general verdict of acquittal does not specify the facts 'necessarily decided' by the jury." *Brackett*, 113 F.3d at 1398–99. In view of that, this court takes a "functional approach to collateral estoppel in criminal cases[.]" *Id.* at 1399. "To determine 'what the jury has necessarily decided,' the court must 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" *United States v. Sarabia*, 661 F.3d 225, 230 (5th Cir. 2011) (alteration accepted) (quoting *Yeager v. United States*, 557 U.S. 110, 129 (2009)). "This 'inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.'" *Id.* (internal quotation marks omitted) (quoting *Ashe*, 397 U.S. at 444).

"But the fact that it is *possible* that the jury could have based its verdict on any number of facts is insufficient to apply the collateral estoppel doctrine." *United States v. El-Mezain*, 664 F.3d 467, 555–56 (5th Cir. 2011) (emphasis in original) (citing *Sarabia*, 661 F.3d at 231; *Brackett*, 113 F.3d at 1398–99; *United States v. Lee*, 622 F.2d 787, 790 (5th Cir. 1980)). "When a fact is not necessarily determined in a former trial, the possibility that it may have been does not prevent re-examination of that issue." *Brackett*, 113 F.3d at 1398 (quoting *Lee*, 622 F.2d at 790) (internal quotation marks omitted). "[O]ur inquiry does not focus on what the jury *may* have decided, but rather on what it *must* have decided." *Sarabia*, 661 F.3d at 232 (citing *Brackett*, 113 F.3d at 1398) (emphasis in original).

No. 23-11132

These precepts in mind, we turn to this case. To determine what the jury necessarily decided in Hamilton's first trial, we must examine the elements of the Travel Act violation. *See Sarabia*, 661 F.3d at 231. The district court instructed the jury that it must consider three elements to convict Hamilton of a Travel Act violation:

> First, that [Hamilton] traveled in interstate commerce or that he used any facility in interstate commerce. Second, that he did so with a specific intent to promote, manage, establish or carry on unlawful activity; that is, bribery; in violation of Texas Penal Code, Section 36.02; and [t]hird, that subsequent to the act of travel or use of any facility in interstate commerce, [Hamilton] did knowingly and willfully promote, manage, establish or carry on such unlawful activity; that is, bribery; in violation of Texas Penal [C]ode, Section 36.02.

*See* 18 U.S.C. § 1952(a). The district court further instructed the jury that violation of Texas Penal Code § 36.02 "requires a direct and intended exchange of the benefit for the recipient's action, not merely a gratuity," i.e., there must be a *quid pro quo* bribe. Thus, to convict Hamilton on the Travel Act count, the jury would necessarily have had to find three things: (1) Hamilton used a facility in interstate commerce when he talked to Caraway on August 2; (2) during that call, he had the specific intent to make a *quid pro quo* bribe; and (3) he actually made such a bribe by giving Caraway the $7,000 check on August 3.

It follows that in acquitting Hamilton on the Travel Act count the jury *could* have found (at least) three different things: (1) Hamilton did not use a facility in interstate commerce when he talked to Caraway on August 2; (2) during that call, Hamilton lacked the specific intent to make a *quid pro quo* bribe; or (3) Hamilton did not actually make a *quid pro quo* bribe when he handed Caraway the check on August 3. Because the jury could have acquitted Hamilton based on the second possibility, that he lacked the

No. 23-11132

required intent when he spoke with Caraway on August 2, the district court correctly concluded that the verdict did not *necessarily* rest on the third possibility, that Hamilton did not make a *quid pro quo* bribe on August 3 when he gave Caraway the check.  *See Sarabia*, 661 F.3d at 232 (emphasis in original) ("[O]ur inquiry does not focus on what the jury *may* have decided, but rather on what it *must* have decided.").[5]  Restated, though it is possible that the jury determined that Hamilton's check was not a *quid pro quo* bribe, that possibility "does not prevent re-examination of th[e] issue."  *Brackett*, 113 F.3d at 1398 (quoting *Lee*, 622 F.2d at 790).

Hamilton all but concedes it is possible that the jury acquitted him on the Travel Act violation because it found he lacked the requisite intent. Instead, the thrust of his argument is that no "rational jury could have grounded its verdict upon an issue other than" the question of whether Hamilton's check was a *quid pro quo* bribe.  *See Sarabia*, 661 F.3d at 230 (quoting *Yeager*, 557 U.S. at 129).  But a practical view of the record belies that contention.  *See id.*

A straightforward comparison of the August 2 phone call transcript and the August 3 meeting transcript shows that a rational jury could have acquitted Hamilton by finding that he lacked the specific intent to make a *quid pro quo* bribe on August 2, regardless of whether he actually made such a bribe on August 3 when he wrote the check.  Though Hamilton and

---

[5] The Government also notes that the district court's charge specifically instructed the jury that it could acquit Hamilton on the Travel Act count if it concluded that the phone call was "inconsequential" to the scheme, thus providing another basis for Hamilton's acquittal.  Though it is possible that the jury found the August 2 phone call to be "inconsequential" to the scheme, the district court did not address that hypothetical in its order denying Hamilton's motion to dismiss, and there is no evidence in the record to support such a finding.  Thus, declining to apply collateral estoppel based on this possibility risks the "hypertechnical and archaic approach" warned of by the Supreme Court in *Ashe*, *see* 397 U.S. at 444, and we do not explore it further.

No. 23-11132

Caraway discussed the proposed ordinance during the August 2 call, and Hamilton asked Caraway to talk to the Mayor about putting the ordinance on the agenda, Caraway never asked for a favor in return. Nor did Hamilton offer Caraway anything of value on the call. By contrast, during the August 3 meeting, Hamilton repeatedly asked Caraway what he could do for him. After Caraway responded that Hamilton "can answer that bill that I just threw out there" and agreed to "follow through with the Mayor," Hamilton gave him a check for $7,000. From that evidence, the jury could have concluded that Hamilton lacked the specific intent to make a *quid pro quo* bribe on August 2, but nonetheless decided to bribe Caraway during the meeting the next day. As the district court succinctly stated, "a lack of the requisite specific intent for the alleged Travel Act violation on August 2 is not dispositive of whether Hamilton paid a bribe on August 3."

Hamilton counters that the record shows that he had no reason to bribe Caraway and the check was a charitable act to help Caraway pay for his mother's medical expenses. Of course it is possible that the jury could have accepted Hamilton's version of the record and acquitted him by finding that the check was a charitable gratuity and not a bribe. "But the fact that it is *possible* that the jury could have based its verdict on any number of facts is insufficient to apply the collateral estoppel doctrine." *El-Mezain*, 664 F.3d at 555–56 (emphasis in original). In short, Hamilton fails to meet his burden to show that the jury in his first trial necessarily determined that the August 3 check to Caraway was not a *quid pro quo* bribe. Therefore, the district court did not err in denying Hamilton's double jeopardy motion.

AFFIRMED.

No. 23-11132

Jennifer Walker Elrod, *Circuit Judge*, concurring:

I join Judge Wilson's opinion because his formulation and application of the burden of proof in this case is consistent with our case law and Supreme Court precedent. Nonetheless, I write separately to express my view that this precedent imposes a burden of proof that is both unclear in its weight and higher than is appropriate in this context.

Under the principle of collateral estoppel, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). In *Ashe v. Swenson*, the Supreme Court held that an issue is barred from relitigation only when the party invoking collateral estoppel can prove that the issue was "[t]he single rationally conceivable issue in dispute before the jury" in the first proceeding. *Id.* at 445.

"This court has interpreted *Ashe* to require a twofold inquiry for analyzing double jeopardy claims." *United States v. Cessa*, 861 F.3d 121, 140 (5th Cir. 2017) (quoting *United States v. Tran*, 433 F. App'x 227, 230 (5th Cir. 2011)); *see Bolden v. Warden, W. Tenn. High Sec. Facility*, 194 F.3d 579, 583-84 (5th Cir. 1999). "First, the court must determine what, if anything, the jury necessarily decided in the first trial." *Cessa*, 861 F.3d at 140 (quoting *Tran*, 433 F. App'x at 230). "Second, a court must determine whether the facts necessarily decided in the first trial constitute essential elements of the offense in the second trial." *Id.* (internal quotation marks omitted) (quoting *Tran*, 433 F. App'x at 230).

The first problem with these articulations of the burden of proof is that they do not clarify the weight of the invoking party's burden to demonstrate that the issue was already determined in the first trial. Must the invoking party demonstrate this by a preponderance of the evidence? Beyond a

No. 23-11132

reasonable doubt? Or by some other standard? The courts would do well to clarify this point.

The second problem is that these precedents, their poor articulation of the invoking party's burden notwithstanding, make that burden unduly heavy. Under these precedents, the invoking party essentially must prove conclusively that the issue under consideration was the sole disputed issue in the first trial for collateral estoppel to apply. If there is any evidence to the contrary, the invoking party loses his challenge. But in other contexts in which a constitutional right is at stake, the Supreme Court and this court have recognized that a party challenging a violation of his constitutional right need only satisfy the preponderance of the evidence standard. *See, e.g.*, *Medina v. California*, 505 U.S. 437, 439 (1992) (criminal defendant claiming incompetence to stand trial must prove incompetence by a preponderance of the evidence); *Moore v. Michigan*, 355 U.S. 155, 161-62 (1957) (to collaterally attack his conviction on ineffective-assistance-of-counsel grounds, criminal defendant must show, by a preponderance of the evidence, that he did not intelligently and understandingly waive his right to counsel); *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001) (on a motion to suppress, defendant generally must prove, by a preponderance of the evidence, that the evidence in question was obtained in violation of her constitutional rights).

The third problem is that these precedents disregard the possibility that a jury could have reached its verdict based on multiple issues, as opposed to merely a single issue. Although a court can never fully know the reasoning behind or the bases for a jury's verdict, it is conceivable that this may sometimes be the case. And in such a scenario, if the invoking party is unable to prove that the relevant issue is the sole issue that the jury "necessarily decided in the first trial," *Cessa*, 861 F.3d at 140 (quoting *Tran*, 433 F. App'x at 230), he will be categorically unable to succeed on a collateral estoppel challenge, in a manner that could violate his constitutional rights.

No. 23-11132

Had Hamilton been required to prove only by a preponderance of the evidence that the question whether his check was a *quid pro quo* bribe was the sole disputed issue in his first trial, the outcome of this appeal may have been different, because he has shown that at least some evidence in the record weighs in his favor. Furthermore, it is conceivable that the jury could have decided Hamilton's Travel Act count based on multiple issues, meaning that any determination regarding whether the jury "necessarily decided" a single issue could violate his right to be free from double jeopardy.

But we are an inferior court with a strict rule of orderliness. And concur I must.